# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

KEVIN LINDKE,
      Plaintiff,

      v.

JOHN D. TOMLINSON,
in his official capacity

      and

MAT KING,
in his official capacity,
      Defendants

_____ /

Case No.: 20-cv-12857
Honorable Sean F. Cox

**FIRST AMENDED
COMPLAINT**

OUTSIDE LEGAL COUNSEL PLC
PHILIP L. ELLISON (P74117)
Attorney for Plaintiff
PO Box 107
Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com

FLETCHER FEALKO SHOUDY &
FRANCIS PC
TODD J. SHOUDY (P41895)
Attorney for Defendant Tomlinson
1411 3rd St, Ste F
Port Huron, MI 48060
(810) 987-8444
tshoudy@fletcherfealko.com

> *Citizens may "sue[] the judges, if not immune*
> *themselves, for their part in carrying out the alleged harm."*
> - *McNeil v. Community Prob Servs*, LLC, 945 F.3d 991, 996 (6th Cir. 2019)

## FIRST AMENDED COMPLAINT

NOW COMES Plaintiff KEVIN LINDKE, by and through counsel, and

complains as follows:

**PARTIES**

1.     Plaintiff KEVIN LINDKE is a resident of St. Clair County.

2.     Defendant JOHN D. TOMLINSON is a state court judge *solely* sued in his *official* capacity and this suit is seeking declaratory relief (or injunctive relief if declaratory relief is not available) and not monetary damages.

3.     "When a state court judge is sued in his [or her] official capacity, the suit is essentially against the state." *Muhammad v. Paruk*, 553 F. Supp. 2d 893 (E.D. Mich. 2008).

4.     "The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, qua entity, may possess, such as the Eleventh Amendment." *Kentucky v. Graham*, 473 U.S. 159, 167 (1985); see also *Alkire v. Irving*, 330 F.3d 802, 810-811 (6th Cir. 2003) ("as a result of being sued only in their official capacities, Sheriff Zimmerly and Judge Irving cannot claim any personal immunities, such as quasi-judicial or qualified immunity, to which they might be entitled if sued in their individual or personal capacities").

5.     Defendant MAT KING is the newly elected Sheriff of the St. Clair County and is sued in his *official* capacity and this suit is seeking declaratory and prospective injunctive relief and not monetary damages.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

6. As a suit against defendants in their official capacities, this "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity" they serve. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

7. Defendants is not sued in any personal capacity.

8. Federal law (42 U.S.C. § 1983) directs that <u>every person</u> who, <u>under color of any statute</u>, ordinance, regulation, <u>custom</u>, or <u>usage</u>, <u>of any State</u> or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, <u>shall be liable</u> to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

9. The Eleventh Amendment "does not preclude actions against state officials sued in their official capacities for prospective injunctive or declaratory relief." *Thiokol Corp. v. Dep't of Treasury*, 987 F.2d 376, 381 (6th Cir. 1993).

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

3

10.    This Eleventh Amendment exception permits a federal court to "compel[] a state official to comply with federal law." *Kanuszewski v. Mich. Dep't of Health & Human Servs.*, 927 F.3d 396, 417 (6th Cir. 2019) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 & fn.10 (1989)).

11.    To the extent that Defendants suggest there is an exhaustion-of-remedies requirement to § 1983 claims, U.S. Supreme Court precedent has expressly rejected that assertion. *Kanuszewski v. Mich. Dep't of Health & Human Servs.*, 927 F.3d 396, 409 (6th Cir. 2019) (citing and quoting *Monroe v. Pape*, 365 U.S. 167, 183 (1961) ("The federal remedy [under § 1983] is supplementary to [any] state remed[ies], and the latter need not be first sought and refused before the federal one is invoked.")).

### ABOUT *EX PARTE YOUNG* CASES AGAINST JUDGES IN THEIR OFFICIAL CAPACITY

12.    "[A] judge *can* be sued in an official capacity, and injunctive relief *can* be granted, when the judge violates a declaratory decree or when declaratory relief is unavailable. Necessarily then, § 1983 also contemplates declaratory relief." *Dixon v. City of St. Louis*, Case No. 19-cv-0112, 2019 WL 2437026 (E.D. Mo. 2019).

13.    Consistent with this statutory scheme, courts have found that declaratory relief may be awarded against judicial defendants named in their official capacity. See, e.g., *Ward v. City of Norwalk*, 640 F. App'x 462, 467

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

(6th Cir. 2016) ("[T]he plain language of § 1983 contemplates a declaratory judgment against judicial officers."); see also *McNeil v. Community Probation Servs., LLC*, 945 F.3d 991, 996 (6th Cir. 2019) (recognizing that constitutionally harmed parties may "sue[] the judges, if not immune themselves, for their part in carrying out the alleged harm.").

14.    Defendant JOHN D. TOMLINSON is sued in his official capacity as an enforcer of the unconstitutional Michigan domestic PPO statute as authoritatively construed.

## ABOUT CASES AGAINST A SHERIFF IN THEIR OFFICIAL CAPACITY EFFECTUATING JUDICIAL ORDERS

15.    The Sixth Circuit has recently explained sovereign immunity does not stand in the way of a lawsuit against a public official "actively involved with administering" the alleged violation, even if it derives from a state judicial order. *McNeil v. Community Probation Servs., LLC*, 945 F.3d 991 (6th Cir. 2019).

16.    The Sixth Circuit in *McNeil* also confirms that an injunction against an official who implements a constitutional violation caused by another official is also allowed.  *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 399 (6th Cir. 2017) and *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 958-59, 966 (6th Cir. 2013) (permitting *Ex parte Young* suit against state actors at three levels of allegedly unlawful action).

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

## NO OTHER PARTY TO NAME

17.     Federal law provides no other party to name for the violations of Plaintiff Lindke's federal constitutional rights. See *Doe v. DeWine*, 910 F.3d 842, 848 (6th Cir. 2018) ("general authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law"); see also *McNeil v. Community Probation Servs., LLC*, 945 F.3d 991 (6th Cir. 2019) ("*Ex parte Young* more often gets plaintiffs in trouble for suing an official too far removed from implementing a policy than for selecting an official too intimately involved in its execution. That's because *Ex parte Young* permits only lawsuits that can be meaningfully described as being against the named official, not those that 'merely mak[e] him a party as a representative of the state, and thereby attempt[] to make the state a party.'").[1]

## JURISDICTION

18.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, which authorizes federal courts to decide cases concerning federal questions; 28 U.S.C. § 1343, which authorizes federal courts to hear civil rights cases; and

---

[1] Plaintiff's counsel has repeatedly invited Defendants' counsel to provide whom else, other than these named individuals in their official capacities, Plaintiff should sue for his allegations that the Michigan domestic PPO statute, as authoritatively construed, violates the First Amendment and has been harm thereby. No viable answer has been revealed. *Someone* is responsible; if there is an individual this Court can point to as be the proper party in light of *Doe* and *McNeil*, Plaintiff stands ready to name and serve them.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

28 U.S.C. § 2201, which authorizes declaratory judgments via the Declaratory Judgment Act.

19.    Venue is proper in this judicial district.

**GENERAL ALLEGATIONS**

20.    Plaintiff KEVIN LINDKE is the father of his young daughter referred to herein as "OGL," a minor child.

21.    Non-party Ami Moeller is the mother of OGL.

22.    Plaintiff KEVIN LINDKE and non-party Ami Moeller have had a heated and contested child custody battle.

23.    At the heart of the matter, it is the belief and verifiable fact that members of OGL's family, including non-party Ami Moeller, has let OGL come into regular contact with a twice-convicted sex offender, Larry Whitcomb. See **Exhibit G**.

24.    Until recently Larry Whitcomb lived in a shack in the forest behind the Moeller farm, both of which is owned by Ron and Norma Moeller, the grandparents of non-party Ami Moeller. See **Exhibit I**.

25.    Due to the belief that local government officials have either been completely indifferent and/or purposely against Plaintiff KEVIN LINDKE's drive to keep OGL from coming into regular contact with a twice-convicted sex offender, Plaintiff KEVIN LINDKE formed and operated a Facebook page

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

formerly known as "Justice for O[GL]" and is now known as "Through My Eyes" (hereinafter "JFO/TME").

26.    The JFO/TME Facebook page features political and opinion commentary about the actions of the family of OGL's mother and also protests, debates, and communicates about the failures of OGL's maternal family as well as complicit governmental officials in failing to use legal authority to prevent "a twice convicted violent sexual predator" from having "ongoing access to" OGL. See https://www.facebook.com/groups/2845344492357419/

27.    This is an example:



OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

28.     This Facebook group has nearly **9,000** voluntary members. See

https://www.facebook.com/groups/2845344492357419/members/

29.     As one can imagine, non-party Ami Moeller greatly dislikes the

JFO/TME Facebook page.

30.     Realizing the connectedness of the Moellers and their

connection to those who are involved with the allegations involving Larry

Whitcomb and the parental custody dispute with OGL, non-party Ami Moeller

stepped outside the child custody process and began utilizing the Michigan

Personal Protection Order (PPO) statute to seek improper relief.

31.     Non-party Ami Moeller has accused Plaintiff KEVIN LINDKE of

talking and discussing _about_ her, OGL, and others which she asserts is a

violation of the Michigan domestic Personal Protection Order statute.

32.     However, as this case and the companion case of _Lindke v Lane_

shows, the Michigan domestic and nondomestic Personal Protection Order

statutes has been authoritatively construed by Judge Lane and Judge

Tomlinson (of the same court) to stifle First Amendment protected speech

_about_ a person as oppose _to_ a person.

33.     On March 31, 2016, Ami Moeller filed for an _ex parte_ domestic

Personal Protection Order against Kevin Lindke.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

34.    In early 2019, Ami Moeller filed a motion seeking entry of an order against Plaintiff Lindke for him to show cause for allegedly violating a pending domestic PPO.

35.    The basis of the motion was "continued harassment from Mr. Lindke on social media, see attached."

36.    The motion continued on by stating—

> It is my understanding that Mr. Lindke's "Kevin Lipa" Facebook account is currently blocked due to people reporting his page. He is now using the page "Keith Wesley." Keith Wesley is the name of Mr. Lindke's father, who is deceased. Mr. Lindke was attempting to communicate with me using this "Keith Wesley" account. Mr. Lindke was speaking directly to me and about me, tagging me in comments. Mr. Lindke also used this account to post photos and posts from a very old Facebook account of mine that was deactivated long ago. No one else would have this information. Mr. Lindke also posted an order from our custody case, which includes my address at the time.

37.    Attached to the motion were several Facebook printouts. See **Exhibit F**.

38.    Defendant JOHN D. TOMLINSON was assigned as the judicial officer in this case.

39.    Evidentiary hearings were held on this matter and testimony was received, under oath, that the "Keith Wesley" was an account owned and controlled by Plaintiff Lindke's sister, Megan Cary. See **Exhibit D, p. 5**.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

40.    As the moving party, Ami Moeller had the responsibility under Michigan law to prove that contempt had, in fact, occurred by Plaintiff KEVIN LINDKE.

41.    There was much spilled ink about whether Ms. Cary posted for herself or for the benefit of Mr. Lindke; however, such is irrelevant for First Amendment purposes. **Exhibit D, pp. 6-7**.

42.    The key and relevant fact in this case is that the relevant Facebook posts (Exhibits A and B) which serve as the basis for violating did not speak _to_ Ami Moeller but rather _about_ Ami Moeller on a Facebook page which Ami Moeller is not a member. This is a major constitutional difference. See **Exhibit H**.

43.    After the hearing closed, Defendant JOHN D. TOMLINSON took the matter under advisement and later issued an "opinion and order" finding that Plaintiff KEVIN LINDKE "violated the PPO" as to stalking for "his" posts as "Kevin Wesley" on the JFO/TME social media forum, "had no First Amendment protections" because such was waived by operation of law, and set sentencing on August 4, 2020. **Exhibit D.**

44.    However, Defendant JOHN D. TOMLINSON never sent a copy of its decision to Plaintiff KEVIN LINDKE or his counsel until August 4, 2020. **Exhibit E.**

45.    As such, neither Plaintiff KEVIN LINDKE nor his counsel appeared on August 4, 2020 for sentencing and the matter was reset for hearing on October 27, 2020.

46.    This lawsuit followed.

**COUNT I - FIRST AMENDMENT VIOLATION**
**"AS AUTHORITATIVELY CONSTRUED" THEORY UNDER *SKINNER***

47.    The prior allegations are alleged word for word herein.

48.    Under this state statute, a petitioner who is an individual with child in common with another can seek an order of a Michigan circuit court enjoining the latter from certain acts including entering onto certain premises, assaulting, attacking, beating, molesting, or wounding a named individual, threatening to kill or physically injure a named individual, interfering with petitioner at petitioner's place of employment or education, and "[e]ngaging in conduct that is prohibited under section 411h or 411i of the Michigan penal code, 1931 PA 328, MCL 750.411h and 750.411i." . MCL 200.2950(1).[2]

49.    Under Michigan law, before such a PPO can enjoin a respondent, "the [trial] court must make a positive finding of prohibited behavior by the respondent before issuing a PPO." *Kampf v. Kampf*, 237 Mich. App. 377, 386 (1999).

_____

[2] Noticeably absent from this list is the unwanted online communications provisions of MCL 750.411s as between individuals without a child in common or spouse. See MCL 600.2950a.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

50.     This count for declaratory and/or injunctive relief seeks to redress deprivation of Plaintiff KEVIN LINDKE's constitutional rights via a challenge to the constitutionality of the Michigan domestic PPO statute as authoritatively construed, see *Skinner v Switzer*, 131 S. Ct. 1289 (2011); Plaintiff KEVIN LINDKE is not seeking money damages but is seeking costs and attorney fees pursuant to 42 U.S.C. § 1988.

51.     Non-party Ami Moeller's allegations on the motion for show cause were that "Kevin Wesley" was speaking *about* Ami Moeller, not *to* Ami Moeller (i.e. "continued harassment from Mr. Lindke on social media," **Exhibit F, p. 1**).

52.     Defendant JOHN D. TOMLINSON, as an agent for the State, authoritatively construed the Michigan domestic PPO statute to mean that discussing about someone on Facebook *about* them, rather than *to* them, continued unlawful stalking pursuant to MCL 750.411h.

53.     "Stalking" is defined "a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." MCL 750.411h(1)(d).

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

54.   Harassment, in turn, means—

conduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress.   MCL 750.411h(1)(c).

55.   However, pursuant to MCL 750.411h(1)(c), "harassment" statutorily "*does not* include constitutionally protected activity."

56.   "There is no categorical 'harassment exception' to the First Amendment's free speech clause." *Saxe v. State College Area Sch. Dist.*, 240 F.3d 200, 204 (3rd Cir. 2001).

57.   Free speech is a constitutionally protected activity under the First Amendment.

58.   The speech of "Kevin Wesley" was not speech <u>to</u> Ami Moeller but rather public speech on a social media platform <u>about</u> Ami Moeller.

59.    The First Amendment protects speech over the Internet to the same extent as speech over other media. *Reno v. American Civil Liberties Union*, 521 U.S. 844, 870 (1997).

60.   One-to-many speech is constitutionally protected even when some of its viewers, including the person that is the topic of the speech, are likely to be offended. **Exhibit H.**

61.    The speech in question was not _to_ Ami Moeller (i.e. direct texts, emails, telephone calls) but rather public speech to the many members of JFO/TME Facebook page _about_ Ami Moeller, especially when Ami Moeller is not a member of the JFO/TME Facebook page. See Exhibits A and B.

62.    Non-defamatory speech about a person to the public, even if insulting, cannot be enjoined or punished by contempt and to do so, as done by Defendant JOHN D. TOMLINSON, by the authoritative construction of the Michigan domestic PPO statute, has rendered such statute as being in violation of the First Amendment.

63.    In his opinion dated June 16, 2020, Defendant JOHN D. TOMLINSON correctly points out that four types of "indirect" speech are excepted from First Amendment protection, i.e. fighting words, inciting or producing imminent lawless action, true threats, and defamatory or libelous statements.

64.    None of the Facebook posts by "Kevin Wesley" (even if attributable to Plaintiff Lindke) fit these exceptions under the First Amendment.

65.    As such, all public speech is protected unless within an exception to authorize the statement to limit or punish such speech and the statutory definition of "stalking" expressly excludes such free speech from being

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

stalking, the authoritative construction of the Michigan domestic PPO statute to punish such renders that statute as violating the First Amendment.

66.    So while a Michigan law could pass constitutional muster limiting (and punishing) one-to-one unwanted speech, it violates the First Amendment when a statute limits and allows for punishment on one-to-many speech in an open public forum.

67.    Plaintiff KEVIN LINDKE is expected to be sentenced to jail for undertaking the First Amendment protected speech as Keith Wesley (despite not being published by him but made by his sister under the nom de plume of "Keith Wesley").

68.    But even assuming that the posts on the JFO/TME Facebook page by "Keith Wesley" are attributed to Plaintiff KEVIN LINDKE, such is still protected First Amendment "one-to-many" speech.

69.    The Michigan domestic PPO statute, as authoritatively construed by Defendants JOHN D. TOMLINSON and MAT KING, is a law existing and being utilized, as effectuated on June 16, 2020 pursuant to its authoritative construction, in violation of the First Amendment to the United States Constitution.

70.    Injury in the form of expected jail time and/or fines are expected to be imposed and/or enforced by Defendants.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

71.   Having no other immediate remedy at law from the unconstitutional Michigan domestic PPO statute (as authoritatively construed) from being impose against him contrary to the protections of the First Amendment, Plaintiff KEVIN LINDKE seeks a remedy in this Court.[3]

72.   The Michigan domestic PPO statute, as authoritatively construed, has and will continue to deprive Plaintiff KEVIN LINDKE of his First Amendment rights to freedom of speech and expression and has chilled his and other's free speech on the JFO/TME Facebook page.

73.   The existence of the Michigan domestic PPO statute, as authoritatively construed, repeatedly and continuously violates the First Amendment to the United States Constitution and chills free speech on the JFO/TME Facebook page.

74.   Each day of improper restrictions on speech constituted separate and cognizable infringement of the First Amendment, *Nebraska Press Assn.*, 423 U.S. 1327, 1329 (1975), with any loss of First Amendment freedoms, for even minimal periods of time, constituted irreparable harm, *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

---

[3] "The federal remedy [under § 1983] is supplementary to [any] state remed[ies], and the latter need not be first sought and refused before the federal one is invoked." *Monroe v. Pape*, 365 U.S. 167, 183 (1961).

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

75.    Defendant MAT KING further effectuated the unconstitutional Michigan domestic PPO statute, as authoritatively construed, by enforcing and/or attempting to enforce the unconstitutional orders of the St Clair County Circuit Court premised on the Michigan domestic PPO statute, as authoritatively construed, when knowing or had reason to know that such action against First Amendment protected speech is expressly unconstitutional.

76.    Defendant MAT KING failed to halt or failed to terminate the effectuation of the unconstitutional Michigan domestic PPO statute, as authoritatively construed, and instead, contrary to the protections of the First Amendment, did seek to, has attempt to, and continues to enforce the unconstitutional Michigan domestic PPO statute, as authoritatively construed.

## DOCUMENTS

77.    Attached as **Exhibit A** is a copy of the same Exhibit A referenced in the June 16, 2020 "opinion and order."

78.    Attached as **Exhibit B** is a copy of the same Exhibit B referenced in the June 16, 2020 "opinion and order."

79.    Attached as **Exhibit C** is a copy of the same paper document without the call recordings marked as Exhibit C referenced in the June 16, 2020 "opinion and order."

80.    Attached as **Exhibit D** is a copy of the "Opinion and Order Regarding Order to Show Cause of March 6, 2019, Against Respondent" dated June 16, 2020.

81.    Attached as **Exhibit E** is a copy of the notification sheet showing that service of "Opinion and Order Regarding Order to Show Cause of March 6, 2019, Against Respondent" dated June 16, 2020 did not occur until August 4, 2020.

82.    Attached as **Exhibit F** is a copy of the Motion and Order to Show Cause regarding alleged contempt of the March 31, 2016 PPO.

83.    Attached as **Exhibit G** is a copy of the sex offender registry profile page for Larry Whitcomb which has, since being secured, been removed from said registry for unknown reasons.

84.    Attached as **Exhibit H** is a copy of a law review article published by Prof Eugene Volokh entitled ONE-TO-ONE SPEECH VS. ONE-TO-MANY SPEECH, CRIMINAL HARASSMENT LAWS, AND "CYBERSTALKING".

85.    Attached as **Exhibit I** is the shack of Larry Whitcomb previously maintained on the Moeller farm where OGL comes in contact with Larry Whitcomb.

## CONCLUSION

86.    Plaintiff KEVIN LINDKE has been deprived of his rights secured by the First and Fourteenth Amendments to the United States Constitution (to which he is entitled as a citizen of this country) by the Michigan domestic PPO statute (as authoritatively construed) for which he seeks a remedy pursuant to federal law.

## RELIEF REQUESTED

87.    WHEREFORE, Plaintiff KEVIN LINDKE respectfully requests this Court to award one or more of the following—

    a.    To the extent not barred by federal law and/or to the extent that declaratory relief is unavailable, issue a temporary restraining order, preliminary injunction, and permanent injunction to enjoin enforcement of Michigan domestic PPO statute as authoritatively construed and/or as applied against one or both Defendants;

    b.    Issue a declaration against one or both Defendants that the Michigan domestic PPO statute, as authoritatively

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

construed, is unconstitutional as it violates Plaintiff KEVIN

LINDKE's First and Fourteenth Amendment freedoms of

free speech and expression under the United States

Constitution;

c.    Award Plaintiff all applicable interest, costs, and attorney

fees pursuant to 42 U.S.C. § 1988;[4] and

d.    Grant all other relief warranted and necessary in the case.

Date: December 28, 2020          RESPECTFULLY SUBMITTED:

/s/ Philip L. Ellison
**OUTSIDE LEGAL COUNSEL PLC**
**PHILIP L. ELLISON (P74117)**
PO Box 107 · Hemlock, MI 48626
(989) 642-0055
(888) 398-7003 - fax
pellison@olcplc.com

**ATTORNEY FOR PLAINTIFF**

---

[4] All references to "Defendant JOHN D. TOMLINSON" means against him in his *official* capacity and not in his *judicial* capacity. "Official capacity" suits are, "in *all respects* other than name, to be treated as a suit against the entity" they serve. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). An official-capacity suit "imposes liability *on the entity* that [s]he represents." *Brandon v. Holt*, 469 U.S. 464, 471-472 (1985). In other words, this case is actually against the State of Michigan. "When a state court judge is sued in his [or her] official capacity, the suit is essentially against the state." *Muhammad v. Paruk*, 553 F. Supp. 2d 893 (E.D. Mich. 2008). "Congress undoubtedly intended… to authorize fee awards payable by the States when their officials are sued *in their official capacities*." *Hutton v Finney*, 437 U.S. 678, 693-694 (1978). "Hence the substantive protections of the Eleventh Amendment do not prevent an award of attorney's fees against [state] officers in their official capacities." *Id.* at 693.

**CERTIFICATE OF SERVICE**

I, the undersigned attorney of record, hereby certify that on the date stated below, I electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel or parties of record.

Date: December 28, 2020                    RESPECTFULLY SUBMITTED:

/s/ Philip L. Ellison
**OUTSIDE LEGAL COUNSEL PLC**
**PHILIP L. ELLISON (P74117)**
Counsel for Plaintiff
PO Box 107
Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

22