## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

KEVIN LINDKE,
    Plaintiff,

    v.

JOHN TOMLINSON
in her official capacity, and

    and

MAT KING,
in his official capacity,
    Defendants

_____/

Case No.: 20-cv-12857
Honorable Sean F. Cox

**RESPONSE**

OUTSIDE LEGAL COUNSEL PLC
PHILIP L. ELLISON (P74117)
Attorney for Plaintiff
PO Box 107
Hemlock, MI 48626
(989) 642-0055
(888) 398-7003 - fax
pellison@olcplc.com

FLETCHER FEALKO SHOUDY &
FRANCIS PC
TODD J. SHOUDY (P41895)
Attorney for Defendant Lane
1411 3rd St, Ste F
Port Huron, MI 48060
(810) 987-8444
(810) 987-8149 – fax
tshoudy@fletcherfealko.com

## RESPONSE IN OPPOSITION TO
## DEFENDANT TOMLINSON'S MOTION TO DISMISS

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

**ISSUES PRESENTED**

Should Defendant Tomlinson's pre-answer motion to dismiss be granted?

Answer:
No

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

i

**MOST CONTROLLING OR
APPROPRIATE AUTHORITY AS TO MOTION**

Rule 12(b)(6)
*DirecTV, Inc. v. Treesh*, 487 F.3d 471 (6th Cir. 2007)

Rule 12(b)(1)
*Wayside Church v. Van Buren County*, 847 F.3d 812 (6th Cir. 2017)

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

**INTRODUCTION**

A "statute <u>must</u> be carefully drawn *or be authoritatively construed* to punish only unprotected speech and not be susceptible of application to protected expression." *Gooding v. Wilson*, 405 US 518, 522 (1972) (emphasis added). The US Supreme Court has confirmed when a plaintiff can challenge a state statute authoritatively construed without running afoul of prudential concerns or abstention doctrines, even if the statute was render adversely against the plaintiff in state court. *Skinner v. Switzer*, 131 S. Ct. 1289, 1298 (2011). "[T]he application of state rules of law by the [] state courts in a manner alleged to restrict First Amendment freedoms constitutes 'state action' under the Fourteenth Amendment." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 916 fn.51 (1982).

This case is carefully crafted solely to challenge the Michigan domestic PPO statute as unconstitutional. The common refrain of "go to or defer to state court first" must fall on deaf ears—a federal plaintiff is not required to first seek redress in any state court or state level proceeding as the federal remedy under § 1983[1] is "supplementary" to any state remedies, and "the

---

[1] Any person who, under color of any statute, ordinance, regulation, custom, or usage, of any State subjects any citizen to the deprivation of any rights, privileges, or immunities secured by the Constitution shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. 42 U.S.C. § 1983.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

latter need not be first sought and refused before the federal one is invoked."
*Monroe v. Pape*, 365 U.S. 167, 183 (1961); *Patsy v. Board of Regents of Fla.*, 457 U.S. 496, 516 (1982). Unconstitutional state action is remedied by a Section 1983 lawsuit. Judges included. *Cooper v. Rapp*, 702 Fed. App'x 328, 333-334 (6th Cir. 2017); *Ward v. City of Norwalk*, 640 Fed. App'x 462, 467-468 (6th Cir. 2016).

Despite this carefully crafted cause of action with an available civil-rights remedy, Defendants have moved to dismiss this case—on the pleadings—for seven reasons. All fail. Dismissal is improper.

## FACTS

Plaintiff Kevin Lindke is the father of his young daughter referred to herein as "OGL," a minor child. **First Am. Compl., ECF No. 9, ¶20.** Non-party Ami Moeller is the mother of OGL. *Id.,* **¶21.** The two have had a heated and contested child custody battle. *Id.,* **¶22.** At the heart of the matter, it is the verifiable fact that members of OGL's family, including non-party Ami Moeller, has let OGL come into regular contact with a twice-convicted sex offender, Larry Whitcomb. *Id.,* **¶23.** Larry Whitcomb lived or lives in a shack in the forest behind the Moeller's farm, both of which is owned by Ron and Norma Moeller, the grandparents of non-party Ami Moeller. *Id.,* **¶24.**

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

Normally, governmental officials would fast come to the protection of young children from such contact with a twice-convicted sex offender. Here, though, they shockingly have not. Plaintiff Lindke alleges that local government officials have either been completely indifferent and/or purposely against Plaintiff Lindke's drive to keep OGL from coming into regular contact with this twice-convicted sex offender. *Id.,* ¶**25.** In response, Plaintiff Lindke formed and operated a Facebook page formerly known as "Justice for O[GL]" and is now known as "Through My Eyes" (hereinafter "JFO/TME"). *Id.* The JFO/TME Facebook page features commentary about the actions of the family of OGL's mother and also protests, debates, and communicates about the failures of OGL's maternal family. *Id.,* ¶**26.** It also offers strongly-worded political and opinion commentary against complicit governmental officials, including Defendant Tomlinson, in failing to use legal authority to prevent "a twice convicted violent sexual predator" from having "ongoing access to" OGL. *Id.* This Facebook group has nearly 9,000 voluntary members. *Id.,* ¶**28.**

As one can imagine, non-party Ami Moeller greatly dislikes the JFO/TME Facebook page taking about her and her benefits of public officials' indifference. *Id.,* ¶**29.** Realizing the connectedness of the Moellers and their connection to those who are involved with the allegations involving Larry

3

Whitcomb and the parental custody dispute with OGL, non-party Ami Moeller stepped outside the child custody process and began utilizing the Michigan domestic Personal Protection Order (PPO) statute to seek improper relief. *Id.,* **¶30.** Non-party Ami Moeller has accused Plaintiff Lindke of talking and discussing *about* her, OGL, and others which she asserts is a violation of the Michigan domestic Personal Protection Order statute, MCL 600.2950. *Id.,* **¶31.**

However, as this case (and the companion case of *Lindke v Lane*) shows, the Michigan domestic Personal Protection Order statute, as authoritatively construed, to stifle First Amendment protected speech *about* a person as oppose *to* a person. *Id.,* **¶32.** Attached to the complaint is a law review article by First Amendment scholar Prof Eugene Volokh discussing the same. **ECF No. 9-8, PageID.523-586.**

### The Background PPO

On March 31, 2016, Ami Moeller filed for and received an domestic Personal Protection Order against Kevin Lindke. **First Am. Compl., ECF No. 9, ¶33.** In early 2019, Ami Moeller filed a motion seeking entry of an order against Plaintiff Lindke for him to show cause for allegedly violating a pending domestic PPO. *Id.,* **¶34.** The basis of the motion was "continued

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

harassment from Mr. Lindke on social media, see attached." *Id.,* **¶35.** The

motion continued on by stating—

> It is my understanding that Mr. Lindke's "Kevin Lipa" Facebook account is currently blocked due to people reporting his page. He is now using the page "Keith Wesley." Keith Wesley is the name of Mr. Lindke's father, who is deceased. Mr. Lindke was attempting to communicate with me using this "Keith Wesley" account. Mr. Lindke was speaking directly to me and about me, tagging me in comments. Mr. Lindke also used this account to post photos and posts from a very old Facebook account of mine that was deactivated long ago. No one else would have this information. Mr. Lindke also posted an order from our custody case, which includes my address at the time.

*Id.,* **¶36.** Several Facebook printouts were attached. *Id.,* **¶37.**

Defendant Tomlinson is a Michigan state court judge and was

assigned as the judicial officer in this case. *Id.,* **¶38.** He is solely sued in his

<u>official</u> capacity. *Id.,* **¶2.** Evidentiary hearings were held and testimony was

received, under oath, that the "Keith Wesley" was an account owned and

controlled by Plaintiff Lindke's sister, Megan Cary. *Id.,* **¶39.** As the moving

party, Ami Moeller had the responsibility under Michigan law to prove that

contempt had, in fact, occurred by Plaintiff Lindke, not by the sister. *Id.,* **¶40.**

There was much spilled ink about whether Ms. Cary posted for herself

or for the benefit of Mr. Lindke; however, such is irrelevant for First

Amendment purposes in this case. *Id.,* **¶41.** The key and relevant fact is that

the relevant Facebook posts which serve as the basis for violating the

Michigan domestic PPO did not was not speech *to* Ami Moeller but First

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

Amendment protected speech rather *about* Ami Moeller on a Facebook page which Ami Moeller is not a member. *Id.,* **¶42.** This is a major constitutional difference. *Id.,* **¶43.**

After the hearing closed, Defendant Tomlinson took the matter under advisement and later issued an "opinion and order" finding that Plaintiff Lindke "violated the PPO" as to stalking for "his" posts as "Kevin Wesley" on the JFO/TME social media forum. *Id.,* **¶43.** As the State's agent, Defendant Tomlinson concluded Plaintiff Lindke "had no First Amendment protections" because such was waived by operation of law. *Id.,* **¶43.**

The First Amended Complaint really only asserts one overall claim. The State enacted, through authoritative construction, the Michigan domestic PPO statute to mean that discussing about someone on Facebook, rather than *to* them, is punishable speech not protected by the First Amendment. *Id.,* **¶43.** Such violates the First Amendment. *See* **ECF No. 9-8, PageID.523-586.** Despite first-hand testimony that the speech about Ami Moellar by "Kevin Wesley" was done Plaintiff Lindke's sister, Defendant Tomlinson rejected such evidence and held the social media posts by "Kevin Wesley" were Kevin Lindke. For this case, it is of no matter because the speech of "Kevin Wesley" (even if attributed to Plaintiff Lindke) was not speech *to* Ami Moeller but rather public speech on a social media platform

*about* Ami Moeller. **First Am. Compl., ECF No. 9, ¶58.** Plaintiff Lindke has alleged that "Keith Wesley's" "non-defamatory speech about a person to the public, even if insulting, cannot be enjoined or punished by contempt and to do so, based on authoritative construction of the Michigan domestic PPO statute, rendered such statute as being in violation of the First Amendment. ***Id.,* ¶62.** "[T]he application of state rules of law by the [] state courts in a manner alleged to restrict First Amendment freedoms constitutes 'state action' under the Fourteenth Amendment." *NAACP*, 458 U.S. at 916 fn.51.

Suing Judge Tomlinson in his official capacity for federal relief is a permissible by *Ex Parte Young.*[2] When a state court judge is sued in his official capacity, the "suit is essentially against the state." *Muhammad v. Paruk*, 553 F. Supp. 2d 893 (E.D. Mich. 2008). In this suit "essentially against the state," Plaintiff Lindke alleges "the Michigan domestic PPO statute, as authoritatively construed,… is a [state] law existing and being utilized… in violation of the First Amendment to the United States Constitution. **First Am. Compl., ¶69.** Michigan's domestic PPO statute, as authoritatively construed, violates the First Amendment when a statute [i.e. a state law] limits and allows for punishment on one-to-many non-defamatory speech about someone in an open public forum. **First Am. Compl., ¶66.**

---

[2] *Ex parte Young*, 209 U.S. 123 (1908)

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

## ARGUMENT[3]

In lieu of an answer, Defendant Tomlinson (sued solely in his official capacity) moved to dismiss raising seven arguments why a First Amendment challenge against the Michigan domestic PPO statute, as authoritatively construed, cannot proceed. All fail.

## I.      Defendant Tomlinson is a proper party to seek to challenge to the Michigan domestic PPO, as authoritatively construed, on First Amendment grounds.

Defendant Tomlinson first argues that there is no Article III case or controversy between Plaintiff Lindke and himself. Defendant misunderstands the exact nature of the case. This case is not seeking to challenge any order of the St Clair County Circuit Court. Instead, this is a *Skinner*-styled case.

---

[3] Challenges to subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) come in two varieties: a facial attack or a factual attack. *Wayside Church v. Van Buren County*, 847 F.3d 812, 816 (6th Cir. 2017) (cleaned up). A facial attack on the subject-matter jurisdiction—like the one Defendant Tomlinson makes here due to the lack of submitted evidence—questions merely the sufficiency of the pleading. *Id.* When reviewing a facial attack, a district court takes the allegations in the complaint as true, just as in a Rule 12(b)(6) motion. *Id.*

A Rule 12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). In reviewing a motion to dismiss, this Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Id.* The defendant has the burden of showing that the plaintiff has failed to state a claim for relief. *Id.* The complaint need only state a claim that is merely <u>*plausible*</u> on its face, i.e., the court must be able to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The judge must treat the allegations as true even if "doubtful in fact." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

8

Agents of the state can and do commit constitutional civil rights violations and this Court is empowered to halt it. *Price v. Medicaid Director*, 838 F.3d 739, 746-747 (6th Cir. 2016). A judge is a state official. A constitutionally-harmed party may sue a state's official on an *Ex Parte Young* theory, including "the judges, if not immune themselves, for their part in carrying out the alleged harm." *McNeil v. Community Probation Servs., LLC*, 945 F.3d 991, 996 (6th Cir. 2019). The Sixth Circuit has recognized that prospective declaratory relief can be available against judicial officers. *Columbia MHC East, LLC v. Stewart*, 815 F. App'x. 887, 891 fn.1 (6th Cir. 2020); see also *Cooper v. Rapp*, 702 F. App'x 328, 333-334 (6th Cir. 2017); *Ward v. City of Norwalk*, 640 F. App'x 462, 467-468 (6th Cir. 2016). Under the *Ex Parte Young* doctrine, a federal court can issue declaratory relief against a state official to comply with federal law. *Price*, 838 F.3d at 746-747.

Defendant Tomlinson suggests he is the wrong party to have sued. In most cases, an unconstitutional statute is enforced against a citizen by an executive branch official, i.e. a prosecutor, a governor, or even the attorney general. However, in the PPO context, the statute authorizes a private party to commence proceeds under the statute. The State then assigns enforcement of the statute upon its agent, the assigned judge. When applying a state process that violates the First Amendment, it constitutes

9

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

state action, even though commenced by a private party. *NAACP*, 458 U.S. at 916 fn.51. It is state action when a state court applies state law in a manner alleged to restrict First Amendment freedoms. *Id.*

Who should Plaintiff have sued to challenge the Michigan domestic PPO statute as violating the First Amendment? The Sixth Circuit has warned against "suing an official too far removed." *McNeil*, 945 F.3d at 996. Why? "[B]ecause *Ex parte Young* permits only lawsuits that can be meaningfully described as being against the [relevant] named official, not those that 'merely mak[e] him a party as a representative of the state, and thereby attempt[] to make the state a party.'" *Id.* Suing an official too far up the chain from the challenged action renders those high-level officials too remote. *Id.* As such, the usual executive branch suspects are too remote as no executive branch official had anything to do with the Michigan domestic PPO statute or its authoritative construction. The only relevant state actors are Defendant Tomlinson (as the enforcer of the statute) and possibly Defendant King, the sheriff who enforces the orders that spawn from the Michigan domestic PPO proceedings. Frankly, there is no reason not to name a statute-enforcing

10

judge in his official capacity under *Ex Parte Young*. *McNeil*, 945 F.3d at 996.

There are simply no other state officials to name to seek relief.[4]

Defendant Tomlinson also argues that he is not a proper party because

he is an "a judge acting as a disinterested judicial adjudicator" and he was

named due to "his rulings in an underlying case, including the PPO issued in

response to a petition seeking such an order, and his finding that Plaintiff

violated that order." Again, not accurate. But he is not being sued as being

an adjudicator because, again, he is not being sued for his decision. He is

being sued merely because he is the state official responsible for *enforcing*

the Michigan domestic PPO statute.[5] The most relevant case is *Georgevich*

*v. Strauss*, which explains that sometimes judges are "sued as enforcers of

the statutes" rather than "in their judicial capacity as neutral adjudicators of

disputes." 772 F.2d 1078, 1087-1088 (3rd Cir. 1985) This is such a case.

"Where a suit challenges... statutes previously enforced by the particular

judge against the plaintiff, judges are proper parties." *Id.* at 1088 (cleaned

up). *Georgevich* provides the correct framework.

In this case, Plaintiff Lindke is not asking this Court to review any

---

[4] In the sister case, the parallel inquiry before Judge Leitman questioned why not sue the State directly in federal court? The answer is simple—it has immunity from suit. *Maben v. Thelen*, 887 F.3d 252, 270 (6th Cir. 2018).

[5] Defendant Tomlinson is expressly invited in his reply to identify *who* is the state official, other than Defendant Tomlinson, that enforces the Michigan domestic PPO statute and would be the proper party to sue.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

adjudication or determination of facts or case outcomes as undertaken by Defendant Tomlinson in the *Moeller v Lindke* matter. However, Defendant Tomlinson's other role is to act as the State's enforcer or administrator of the Michigan domestic PPO statute, i.e. state action. *NAACP*, 458 U.S. at 916 fn.51. This case calls on this Court to review what the law (not facts) is and the law's constitutionality, not the specific adjudication, determination, and/or decision of facts applied to that law in *Moeller v Lindke*. In short, the State created a statute and assigned the task of enforcing the statute (after any adjudication is complete) to Defendant Tomlinson. Defendant Tomlinson is being hailed in the court not for role as "neutral adjudicators of disputes" but to answer as the *Ex Parte Young* official who enforces of the illegal statute itself.

A final example may help. Pretend Michigan has a child custody statute that, as one of the best interest factors, bars anyone who is an Asian descendant from having custody. Such a statute is blatantly unconstitutional. In a child custody case started by Mother, she accuses Father of being Asian descendant because his step-mother is Asian. A judge is called upon to adjudicate the issue and finds, as a matter of authoritative construction, that a person who has an Asian-step mother who raised Father as a boy is an Asian descendant and is not entitled to custody under the racist child custody

statute. Father sues the state court judge in his official capacity in federal court to declare Michigan's racist child custody statute as unconstitutional. He alleges that statute which allows for the use of Asian descendancy as violative of equal protection. The state court judge moves to dismiss on the grounds that he is a judge acting as a disinterested judicial adjudicator and cannot be sued. However, the federal lawsuit is not seeking to challenge that Father lost custody. He is suing to challenge that *the statute itself* is unconstitutional. In that respect, the state court judge is actually the enforcer of the racist and unconstitutional child custody statute. He is not being sued as to his decision to deny Father custody. This is a careful distinction.

A parallel case is being brought here. Mother (Ami) seeks to use the Michigan domestic PPO statute to prevent Father (Kevin) from going online to speak about her. Father (Kevin) denies he ever did. Defendant Tomlinson is called upon to adjudicate whether such communications occurred on social media and finds under the Michigan domestic PPO statute that a person who speaks *about* someone on Facebook as same as having been spoken *to* them, and such is punishable under the Michigan domestic PPO statute. Father sues Defendant Tomlinson in his official capacity in federal court to declare Michigan's domestic PPO statute as unconstitutional under the First Amendment. The lawsuit is not seeking to challenge that Father

(Kevin) lost the case as the judge's factual findings. Instead, Father (Kevin) is suing to challenge that *the statute itself* is unconstitutional. In that respect, Defendant Tomlinson is the enforcer of the unconstitutional domestic PPO statute. He is not being sued as to his decision in finding that Father (Kevin) violated the statute. As to challenges made against Defendant Tomlinson in the latter role, he is a proper party. *Georgevich*, 772 F.2d at 1087-1088; see also *Skinner v. Switzer*, 131 S.Ct. 1289 (2011). Dismissal is improper.

## II.   The case is not barred by *Rooker-Feldman*.

Next, Defendant Tomlinson argues that *Rooker-Feldman* bars this action—a lawsuit solely challenging the constitutionality of the Michigan domestic PPO statute. He is wrong again.

The US Supreme Court has explained this doctrine is "narrow" and solely confined to federal cases "brought by [1.] state-court losers complaining of injuries [2.] caused by state-court judgments [3.] rendered before the district court proceedings commenced and [4.] inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). And where Defendant Tomlinson again gets confused is that the federal case must explicitly be seeking to vacate a state court judgment. *Van Hoven v. Buckles & Buckles*,

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

PLC, 947 F.3d 889 (6th Cir. 2020). Plaintiff Lindke is *not* seeking any such relief. Court can confirm the same. **First Am. Compl., ECF No. 9, ¶87**.

*Rooker-Feldman* is not implicated and "does not bar suits that challenge actions or injuries *underlying* state court decisions… rather than the decisions themselves." *Allen v. DeBello*, 861 F.3d 433, 438 (3rd Cir. 2017). In other words, when the source of the injury is not the state court judgments itself, the federal suit is independent, "*even if it asks the federal court to deny a legal conclusion reached by the state court*." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 167 (3rd Cir. 2010). This makes sense when looking to the above example of the racist child custody statute. Moreover, issue similarity or mere overlap between state court issues and federal is not enough to invoke the doctrine. *Thana v. Bd. of License Comm'ners*, 827 F.3d 314, 320 (4th Cir. 2016). *Rooker-Feldman* does not "stop a [federal] district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Exxon-Mobil*, 544 U.S. at 293. That a plaintiff "previously may have presented to the state court some of the arguments in his federal complaint does not strip the district court of jurisdiction." *Hulsey v. CISA*, 947 F.3d 246, 251 (4th Cir. 2020). Moreover, "it is not an impediment to the exercise of federal jurisdiction that the 'same

or a related question' was earlier aired between the parties in state court."

*Skinner*, 562 U.S. at 532. Instead, the doctrine only applies when the party

seeking relief in federal court is expressly asking the federal court to "reverse

or modify" a state court final judgment. *Adkins v. Rumsfeld*, 464 F.3d 456,

464 (4th Cir. 2006). The Sixth Circuit explains the technical difference—

> Appellate review — the type of judicial action barred by Rooker-
> Feldman — consists of a review of the proceedings already conducted
> by the lower tribunal to determine whether it reached its result in
> accordance with law. When, in contrast, the second court tries a matter
> anew and reaches a conclusion contrary to a judgment by the first
> court, without concerning itself with the bona fides of the prior judgment
> (which may or may not have been a lawful judgment under the
> evidence and argument presented to the first court), it is not conducting
> appellate review, regardless of whether compliance with the second
> judgment would make it impossible to comply with the first judgment.

*Coles v. Granville*, 448 F.3d 853, 858-859 (6th Cir. 2006).

Take, for example, the *Skinner* decision. Skinner, a convicted

murderer, twice brought actions in Texas state court for DNA testing of the

untested biological evidence. The Texas courts ruled against him. He then

sued in federal court alleged that Texas, via the same prosecutor, violated

his Fourteenth Amendment right to due process by refusing to provide for

the DNA testing he requested. The prosecutor invoked *Rooker-Feldman*.

The Supreme Court rejected the doctrine's applicability. According to the

Supreme Court, because Skinner's federal case does not explicitly challenge

the adverse state-court judgment, but rather challenges the Texas statute as

16

authoritatively construed by the same court underlying the decision, federal courts are not jurisdictionally barred. Federally challenging a statute, rule, or practice governing the state court's prior decision is not barred by *Rooker-Feldman* and a federal court jurisdiction to entertain the suit. *Skinner*, 131 S. Ct. at 1297-1298 (quoting *Exxon*, 544 U.S. at 292-293). This true even if "the same or a related question was earlier aired between the parties in state court." *Id.*

Plaintiff Lindke is doing the same thing here as in *Skinner*. His prayer for relief is not seeking to "reverse or modify" any final judgment but rather to challenge the unconstitutionality of the Michigan domestic PPO statute as authoritatively construed for being contrary to the First Amendment. **First Am. Compl., ECF No. 9, ¶87.** The fact that the prior state court proceedings might overlap with Plaintiff Lindke's federal claim is not enough when he is not explicitly seeking reverse or modify any final judgment of the state court. The source of Plaintiff Lindke's harm is not a final judgment but the Michigan domestic PPO statute (as authoritatively construed) itself. As such, *Rooker-Feldman* simply does not apply.

Judge Sutton has offered some sage advice to this Court—

> Absent a claim seeking review of a final state court judgment, a federal court tempted to dismiss a case under *Rooker-Feldman* should do one thing: Stop. If the temptation lingers, the court should try something else: Reconsider. And if that does not work,

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

the court should exercise jurisdiction anyway and ask the U.S. Supreme Court to reverse it.

*VanderKodde v. Mary Jane M. Elliott, PC*, 951 F.3d 397, 409 (6th Cir. 2020) (Sutton, J., concurring).

## III.   This case is not barred by the *Younger* doctrine.

The *Younger* abstention derives from a desire to prevent federal courts from interfering with the functions of a singular type of state proceeding: pending criminal prosecutions. *Younger v. Harris*, 401 U.S. 37, 44 (1971). It too has a narrow place in federal jurisprudence. The doctrine only applies as to federal cases being asked "*to enjoin* pending state proceedings." *Fowler v. Benson*, 924 F.3d 247, 255 (6th Cir. 2019); see also *Ohio Civil Rights Comm'n v. Dayton Christian Schs, Inc.*, 477 U.S. 619, 626 (1986) ("a federal court should not enjoin a pending state criminal proceeding except in the very unusual situation that an injunction is necessary to prevent great and immediate irreputable injury"). Plaintiff Lindke reminds the Court this case was carefully crafted; Plaintiff is not seeking to and has not asked this Court to enjoin a pending state criminal proceeding. **First Am. Compl., ¶87.** "The presence of two parallel suits... does not run afoul of *Younger*." *Schall v. Joyce*, 885 F.2d 101, 112 (3rd Cir. 1989) "Where federal proceedings parallel but do not interfere with the state proceedings, the principles of comity underlying *Younger* abstention <u>are not implicated</u>." *Marks v. Stinson*, 19 F.3d

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

873, 881 (3rd Cir. 1994). As such, this doctrine is not applicable either. *Sprint Comm, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013).[6] Dismissal based on *Younger* is improper.

## IV. There is no failure state a claim when demanding forms of relief.

Next, Defendant Tomlinson seeks a "dismissal" due to sought conditional[7] injunctive relief on the First Amendment violation. As a threshold matter, an injunction is a form of *relief*, not a *claim*. See *Terlecki v. Steward*, 754 N.W.2d 899, 912 (Mich. App. 2008). One cannot "fail to state a claim" when seeking relief (at the case's end) deriving from a pled claim. The claim here is that the Michigan domestic PPO statute violates the First Amendment and such a claim is cognizable via 42 U.S.C. § 1983. Minimally, declaratory relief is available. *Cooper*, 702 Fed. App'x at 333-334; *Ward*, 640 Fed. App'x at 467-468. After the Court makes that claim determination, it will _then_ decide what relief is warranted on that claim.

The premature question raised by Defendant Tomlinson is what relief is available against him _after_ this Court first rules on the unconstitutionality

---

[6] "[F]ederal courts ordinarily should entertain and resolve on the merits an action within the scope of a jurisdictional grant, and should not refuse to decide a case in deference to the States."

[7] Paragraph 87(a) of the First Amended Complaint conditionally requests "*[t]o the extent not barred by federal law and/or to the extent that declaratory relief is unavailable*, issue a temporary restraining order, preliminary injunction, and permanent injunction to enjoin enforcement of Michigan domestic PPO statute as authoritatively construed and/or as applied against one or both Defendants."

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

of the Michigan domestic PPO statute? That is putting the cart before the horse. The question is whether Plaintiff had <u>stated a claim</u>, not whether he is entitled to particular form of relief over another. A motion under Rule 12(b)(6) is the improper vehicle to make such a challenge.[8]

## V.   There is a valid claim on the merits.

For its next argument, Defendants Tomlinson continues to beat the dead horse he has misidentified. He asserts "the entire premise of Plaintiff's first amendment claim is that Judge Tomlinson barred protected speech by finding that Plaintiff violated the PPO by making speech about Ms. Moeller (which is allegedly protected), and not speech to Ms. Moeller, which everyone seems to agree is not protected speech." Again, not exactly true. The *actual* premise of this case is that the Michigan domestic PPO statute unconstitutionally permits the State (by its courts) to enjoin and/or punish non-defamatory speech made online <u>about</u> a person. Such speech is protected by the First Amendment. **ECF No. 9-8, PageID.523-586.** Plaintiff

---

[8] It is true that under a Section 1983 claim that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." However, strictly-speaking, Defendant Tomlinson is not named as a "judicial officer." This is a "official capacity" suit and is actually, in all but name, "against *the entity*." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). An official-capacity suit "imposes liability on *the entity* that he represents." *Brandon v. Holt*, 469 U.S. 464, 471-472 (1985).

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

will repeat that again—Plaintiff is not challenge Defendant Tomlinson's *decision*; Plaintiff is challenging *the Michigan domestic PPO statute*. "[T]he application of state rules of law by the [] state courts in a manner alleged to restrict First Amendment freedoms constitutes 'state action…'" *NAACP*, 458 U.S. at 916. State action that violates the First Amendment (i.e. the existence of a state law which enjoins and/or punishes First Amendment protected speech) is actionable and remedied by the federal courts. 42 U.S.C. § 1983.

Defendant Tomlinson also argues that dismissal is warranted because "the speech that violated the PPO was speech _to_ Ms. Moeller." This argument is impermissible for two reasons. First, it is simply not true. The social media posts were all made publicly to the public audience of JFO/TME Facebook page by someone other than Kevin Lindke and never directly to Ami Moeller; it was only _about_ her.[9] Second, this argument is improper in

---

[9] By way of analogy, consider this sign—



This message is _about_ Trump and Reynolds, not _to_ Trump and Reynolds even though it uses both their names and faces in the message itself, and can be seen or received by Ms. Trump or Ms. Reynolds.

that it asks the Court to reject allegations expressly made by Plaintiff Lindke in the Complaint as true. Such is contrary to the standard of review required for this motion under Rule 12(b)(6). *DirecTV*, 487 F.3d at 476.

## VI. On the pleadings, Defendants cannot assert the fugitive disentitlement doctrine.

On a facial Rule 12(b)(1) and Rule 12(b)(6) motion, Defendants and the Court are expressly limited to the allegations in the pleadings. Footnote 2, *supra*. There is nothing pled about Plaintiff Lindke being a fugitive. As such, it is outside the permissible scope of such a motion. Such relief is required to be support by evidence, see e.g. *Etherly v Oregon*, 2007 U.S. Dist. LEXIS 12050, at *7 (D Or, Feb. 19, 2007), which means it must be done on a motion not limited to the pleadings, which has not been filed.[10]

However, the doctrine is nevertheless not applicable or otherwise should not be invoked. There is no court rule or statute which authorizes dismissal of a citizen's federal constitutional challenge based on one's alleged status as a fugitive from <u>another</u> court from <u>another</u> jurisdiction. Instead, the doctrine derives from a federal court's "inherent authority." Federal courts reject the use of the doctrine to protect the "dignity" of a state

---

[10] It also cannot be invoked on a Rule 12(b)(1) motion because "[t]he power of an American court to disentitle a fugitive from access to its power and authority is not <u>jurisdictional</u> in nature." *Molinaro v. New Jersey*, 396 U.S. 365, 366 (1970).

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

court when there is no prejudice[11] to the federal action. *Marran v Marran*, 376 F.3d 143, 148-149 (3rd Cir. 2004). This should be especially true when the "affronted" state court system does not even recognize the doctrine as a punishment in its own courts. *Fitzsimons v Fitzsimons*, Case No. 347671, 2020 Mich App LEXIS 3367, at *7; 2020 WL 2505267 (Mich. Ct. App., May 14, 2020) (such a rule has not been adopted in Michigan).

In *Ortega-Rodriguez v. U.S.*, 507 U.S. 234 (1993), the Supreme Court explained it cannot "accept an expansion" of the reasoning of a court "defending judicial dignity" to allow another court (in that case, an appellate court) "to sanction by dismissal any conduct that exhibited disrespect for any aspect of the judicial system, even where such conduct has no connection to the course of appellate proceedings." *Id.* at 246. If a defendant flees while his case is before one particular court, *that* court is well situated to impose an appropriate punishment. *Id.* at 247. Applying that analysis here, Plaintiff Lindke has not insulted the "dignity" of this Court (or any other federal court) when seeking federal relief. If this Court agrees with Plaintiff Linke's position on the unconstitutionality of the Michigan domestic PPO statute, it would invalidate the law and provide an excusal of any contempt. See *Stanton v.*

---

[11] Plaintiff Lindke has two other federal actions pending in the Eastern District (Case No. 2:20-cv-10872 and 3:19-cv-11905) and has fully complied with all obligations imposed by those courts, including appearing for a deposition by Zoom.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

*Lloyd Hammond Produce Farms*, 400 Mich. 135, 144-145 (1977); *In re Providence Journal Co.*, 820 F.2d 1342 (1st Cir. 1986). The Supreme Court further warned against the expansive use of this doctrine as being "too rough." *Degen v. United States*, 517 U.S. 820, 829 (1996).

In support of the doctrine, Defendants rely on *Prevot v. Prevot*, 59 F.3d 556 (6th Cir. 1995). The case is not factual or procedurally analogous and its reasoning runs contrary to *Degen* and *Ortega-Rodriguez*. Moreover, *Prevot* has been declined to be followed by other courts and "[t]here is also language in the [*Prevot*] opinion that relies on arguments later rejected by the Supreme Court in *Degen*, so it is not clear whether *Prevot* would be decided the same way today." *Brown v. O'Dea*, 187 F.3d 572, 585 (6th Cir. 1999) (Moore, J., concurring); see also *In re Walsh*, 53 F. Supp. 2d 91, 95 (D. Mass. 1999).

But even if the doctrine is deemed applicable contrary to the arguments above, the remedy should be to stay this case, not dismiss it, as "[t]he power of an American court to disentitle a fugitive from access to its power and authority *is not jurisdictional in nature.*" *Molinaro v. New Jersey*, 396 U.S. 365, 366 (1970) (emphasis added). Plaintiff Lindke has not surrendered because he has discovered disqualifying and due process wrongs alleged to have been undertaken by Defendant Tomlinson in the case and has, with

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

assistance of other counsel, recently filed extensive papers in the St. Clair County Circuit Court and the Michigan Judicial Tenure Commission. To brand him a "fugitive" along the likes we see in moves is not accurate. He is not the traditional "fugitive" given that he has continued to heavy press defenses in this case and by making heavy filings with the St. Clair County Circuit Court and the Michigan Judicial Tenure Commission. Dismissal on these grounds is "too rough." *Degen*, 517 U.S. at 829. However, to the extent this Court invokes the doctrine, the Court is requested to following the procedure recently utilized by the Eighth Circuit and allow Plaintiff Lindke to surrender first himself. *U.S. v. Diaz*, No. 19-1801, 2020 WL 6834387 (8th Cir. Nov. 23, 2020) (dismissal in thirty days unless the fugitive surrenders).

## RELIEF REQUESTED

WHEREFORE, the Court is requested to deny the motion to dismiss made by Defendant Tomlinson sued in his official capacity.

Date: January 28, 2021                    RESPECTFULLY SUBMITTED:

                                          /s/ Philip L. Ellison
                                          OUTSIDE LEGAL COUNSEL PLC
                                          BY PHILIP L. ELLISON (P74117)
                                          PO Box 107 · Hemlock, MI 48626
                                          (989) 642-0055
                                          pellison@olcplc.com

                                          Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I, the undersigned attorney of record, hereby certify that on the date stated below, I electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel or parties of record.

Date: January 28, 2021

RESPECTFULLY SUBMITTED:

/s/ Philip L. Ellison
OUTSIDE LEGAL COUNSEL PLC
BY PHILIP L. ELLISON (P74117)
PO Box 107 · Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com

Attorney for Plaintiff

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

26